IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONATO M. GIAQUINTO | : | CIVIL ACTION |
| | : | |
| vs. | : | NO.  07-CV-5280 |
| | : | |
| SMITH BARNEY[1] | : | |

MEMORANDUM OPINION AND ORDER

GOLDEN, J.                                                                                                       APRIL 3, 2008

      This action was originally commenced by Plaintiff in the Court of Common Pleas of Lehigh County, then removed by Defendant to this Court on the basis of federal question and diversity jurisdiction. Plaintiff worked for Defendant as a financial consultant from January, 1977 until he resigned on October 12, 2006. Plaintiff claims he was constructively discharged by the Defendant because of his age. He has asserted two counts under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq., one count under the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1 et seq.  and one count under the Pennsylvania Human Relations Act, 43 P.S. §§ 951 et seq. Presently before the Court is the motion of the Defendant to compel arbitration or, in the alternative, to dismiss for failure to exhaust administrative remedies. For the reasons which follow, the motion to compel arbitration will be granted and the motion to dismiss will be denied as moot.

      A motion to compel arbitration is viewed as a summary judgment motion if the parties contest the making of the agreement. Lepera v. ITT Corp., No. 97-1461, 1997 WL 535165, at *3

---

[1] The Defendant advises that Smith Barney is not a legal entity but is a division of Citigroup Global Markets, Inc.

(E.D.Pa. Aug. 12, 1997)(citing Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980)). In most cases, a party has a right to a jury trial on this issue. Id.. However, if there is no genuine issue of fact concerning the formation of the agreement, the court should decide whether the parties did or did not enter into the agreement. Id. "Further, the court should apply the summary judgment standard, giving the opposing party `the benefit of all reasonable doubts and inferences that may arise.'" Id. (citations omitted).

There is a strong federal policy in favor of the resolution of disputes through arbitration. Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Accordingly, federal law presumptively favors the enforcement of arbitration agreements. Alexander, 341 F.3d at 263. Before a federal court entertaining a motion to compel arbitration may order a reluctant party to arbitrate, however, the Federal Arbitration Act "requires the court to engage in a limited review to ensure that the dispute is arbitrable- i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990)(overruled by implication on other grounds by Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002), as recognized by Dean Witter Reynolds, Inc. v. Druz, 2003 U.S. App. LEXIS 15523 (3d Cir. Aug. 4, 2003)). In making this determination, courts are to look to the relevant state law, in this case Pennsylvania law, of contracts. Alexander, 341 F.3d at 264.

The first issue then is whether the parties entered into a valid arbitration agreement. On February 20, 1998, Plaintiff signed a document entitled "Employee Handbook Receipt Form" which states, in pertinent part:

> I have received the Salomon Smith Barney Interim Employee Handbook which has been given to me and/or which is located on PCI under the verb "HR" or available from my

2

> manager. I will comply with all the Policies and Procedures of Salomon Smith Barney. I will take responsibility for having any questions about any policies answered. This document does not create a contract between Salomon Smith Barney and me for employment for any definite period of time or for the providing of benefits of any type for any definite period of time, and that I understand that any and all policies, programs or benefits described therein may be modified or amended by the Firm in any manner or at any time and do not alter the fact that I am an "at-will" employee.
>
> I agree to be bound by the Travelers/Salomon Smith Barney Principles of Employment, which includes a predispute, employment arbitration provision, as part of entering into, or continuing an employment relationship with Salomon Smith Barney.
>
> I understand it is my responsibility to read the Salomon Smith Barney Interim Employee Handbook carefully and if I do not understand any portion of it, to see my manager or Human Resources Generalist for an explanation.

See Exhibit A to Declaration of Andrew H. Smith, Esq.

The Principles of Employment contained in the Interim Employee Handbook state, in pertinent part: "[Y]ou must agree to follow our dispute resolution/arbitration procedures for employment disputes...These procedures include all employment disputes (including, but not limited to, termination of employment claims, demands or actions under...the Age Discrimination in Employment Act... [and] any other federal, state or local statute or regulation regarding employment, discrimination in employment, the terms and conditions of employment or the termination of employment, and the common law of any state)...."

Id.

After the Interim Employee Handbook, Salomon Smith Barney issued to its employees the Salomon Smith Barney Employee Handbook. That handbook contains nearly identical arbitration requirements as those contained in the Interim Employee Handbook. Id. at Exhibit B.

In Pennsylvania, courts have held that, under certain circumstances, the distribution of an employee handbook containing a mandatory arbitration policy can result in an enforceable

3

arbitration agreement. If the handbook announces the employer's intention to be bound by the arbitration policy, and if an employee has notice of the policy and chooses to continue on in his employment, the handbook constitutes an "offer" and the employee's choosing to continue the employment constitutes both "acceptance" and "consideration." See Gutman v. Baldwin Corp., No. 02-7971, 2002 WL 32107938, at *3-4 (E.D.Pa. Nov. 22, 2002) (applying Pennsylvania law); Morosetti v. La Land & Exploration Co., 564 A.2d 151, 152-53 (Pa. 1989)("A handbook distributed to employees as an inducement for employment may be an offer and its acceptance a contract."); Darlington v. General Electric, 504 A.2d 306, 320 (Pa.SuperCt. 1986)("Provisions in a handbook or manual can constitute a unilateral offer of employment which the employee accepts by the continuing performance of his or her duties."); Martin v. Capital Cities Media, Inc., 511 A.2d 830, 841-42 (Pa.Super.Ct. 1986)("[T]o find that ....a handbook has legally binding contractual significance, the handbook or an oral representation about the handbook must in some way clearly state that it is to have such effect.").

In the case sub judice, Plaintiff signed the Employee Handbook Receipt Form which acknowledged that Plaintiff had in fact received the Salomon Smith Barney Interim Handbook which contained, inter alia, the arbitration clause. By signing the Receipt Form, Plaintiff also agreed to be bound by the Travelers/Salomon Smith Barney Principles of Employment which the Receipt Form specified included a predispute employment arbitration provision as part of entering into , or continuing employment with Salomon Smith Barney.  Both the Receipt Form and the Handbook gave Plaintiff notice of Defendant's arbitration policy and both are sufficient to constitute an offer of continued employment subject to the terms of the handbook. Plaintiff continued to work for Defendant until he resigned on October 12, 2006.  His continued employment after being made aware of the arbitration policy is sufficient to constitute both acceptance of the Defendant's offer as well as

consideration for an enforceable arbitration agreement. Therefore, viewing the undisputed facts in the light most favorable to Plaintiff, there was an offer of continued employment subject to the terms of the Handbooks, acceptance of the offer and consideration. As such, Plaintiff is bound by the arbitration provisions contained in the Handbooks.

Plaintiff contends that he is not bound by any provisions in either the Interim Employee Handbook or the Employee Handbook because the Receipt Form, according to Plaintiff, states that the "Handbook does not constitute an employment contract and is not intended to create contractual obligations of any kind." Plaintiff's Opposition Brief at 5. Plaintiff, however, does not recite the provision in its entirety. The Receipt Form actually states: "[t]his document [Interim Employee Handbook] does not create a contract between Salomon Smith Barney and me <u>for employment for any definite period of time or for the providing of benefits of any type for any definite period of time</u>......" Exhibit A (emphasis added). Thus, contrary to stating that the Handbook does not constitute a contract at all, the language referenced by Plaintiff merely states that the Handbook does not create a contract or provide benefits <u>for a definite period of time</u>.

Plaintiff directs our attention to <u>Dumais v. American Golf Corporation</u>, 299 F.3d 1216 (10th Cir. 2002) where the Tenth Circuit refused to compel arbitration because the clause at issue in the handbook allowed the employer to unilaterally alter, modify or change any provision of the handbook, including an arbitration agreement. The Court held that the fact that the handbook gave the employer the "unfettered right" to alter the arbitration agreement's existence rendered the arbitration agreement illusory. 299 F.3d at 1219.

In the case <u>sub judice</u>, the arbitration policy contains the following language in paragraph 11, entitled <u>Amendment or Termination of Arbitation Policy</u>: "The firm reserves the right to

revise, amend, or modify this Policy at any time in its sole discretion. Such amendments may be made by publishing them in the Employee Handbook or by a separate release to employees and shall be effective thirty (30) days after such amendments are provided to employees. Your continuation of employment after receiving such amendments shall be deemed acceptance of the amended terms." Exhibit A to Smith Declaration. Thus, unlike the situation in Dumais, the arbitration policy here provides that notice be given to the employees before any amendment to the arbitration policy would take place and that continuing employment is consideration for any such amendments to the policy.

In Gibson v. Neighborhood Health Clinics, 121 F.3d 1126 (7th Cir. 1997), the Seventh Circuit held that an arbitration agreement was unenforceable because there was no consideration. The Court specifically stated, "In the present case, however, NHC never made a promise to continue Gibson's employment in exchange for her promise to submit claims to arbitration. That is, it never communicated to her that if she signed the Understanding she could continue to work there...." 121 F.3d at 1132. In the case sub judice, on the other hand, continued employment was specific consideration for Plaintiff's agreement to arbitrate.

In sum, the Court finds that the parties entered into a valid arbitration agreement. The Court also finds that Plaintiff's claims under the ADEA and the other statues are specifically covered by the arbitration agreement. Accordingly, the Court finds that the claims in Plaintiff's Complaint must be arbitrated and that this action will, therefore, be dismissed.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONATO M. GIAQUINTO | : | CIVIL ACTION |
| | : | |
| vs. | : | NO.  07-CV-5280 |
| | : | |
| SMITH BARNEY | : | |

      AND NOW, this 3rd day of April, 2008, it is hereby ORDERED that the Motion of the Defendant to Compel Arbitration [Doc. #3] is GRANTED.

      The parties are compelled to arbitration in accordance with the Arbitration Code of the National Association of Securities Dealers.

      The Complaint is DISMISSED.

      The motion to Dismiss [Doc. #3] is DENIED as moot.

      The Clerk is DIRECTED to close this case for statistical purposes.

      BY THE COURT:

*/s/ THOMAS M. GOLDEN*
THOMAS M. GOLDEN, J.